IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PAUL WYERS                                                                                            PLAINTIFF

                v.                                     Civil No. 11-2028

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                DEFENDANT

## MEMORANDUM OPINION

      Plaintiff, Paul Wyers, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.**    **Procedural Background:**

      The plaintiff filed his applications for DIB and SSI on January 31, 2006, alleging an onset date of May 1, 2005, due to back pain, seizures, and depression. Tr. 19, 54-58, 83, 86, 101, 121, 218, 379, 463, 487, 498.  His claims were denied both initially and upon reconsideration.  Tr. 19, 41-47.  An administrative hearing was then held on May 23, 2007, and an unfavorable decision resulted.  Tr. 377-391.  Following denial of review by the Appeals Council, this matter was appealed to this Court.  On September 10, 2009, an order was entered reversing and remanding the case to the Commissioner for further administrative proceedings.  Tr. 415-420.

      After remand, the matter was consolidated with a new SSI application dated August 1, 2008.  A supplemental administrative hearing was held on August 9, 2010.  Tr. 395, 757-781. Plaintiff was present and represented by counsel.

At the time of the supplemental hearing, plaintiff was 37 years of age and possessed an eleventh grade education. Tr. 15, 379-380, 764 . He had past relevant work ("PRW") as a forklift operator and highway maintenance laborer. Tr. 75-82, 380, 386, 387.

On October 22, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's status post back surgery and epilepsy did not meet or equal any Appendix 1 listing. Tr. 397-399. The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform light work requiring only occasional climbing ramps/stairs, balancing, stooping, kneeling crouching, and crawling and no climbing ladders/scaffolds/ropes, exposure to hazards such as unprotected heights and heavy machinery, and no driving. Tr. 399-404. He also concluded that Plaintiff could understand, remember, and carry out simple, routine, and repetitive tasks as well as respond appropriately to supervisors, co-workers, the general public, and usual work situations. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as a machine tender, assembly worker, and inspector. Tr. 71-72.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 1, 2011. Tr. 1-5. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 12.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to

support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A. **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her

3

residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

Of particular concern to the undersigned is the ALJ's treatment of the RFC assessments of Dr. R. W. Ross, Plaintiff's treating physician, and his medical records in support thereof. The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). Further, the ALJ is not free to ignore medical evidence, rather must consider the whole record. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000)

On April 25, 2006, Dr. Ross completed an Arkansas Department of Human Services Confidential Report of Medical Examination of Patient. Tr. 214-216. He noted that plaintiff had permanent disabilities namely, a herniated disk in his lumbar spine and seizure disorder. As a result, Dr. Ross stated that plaintiff was severely limited with regard to stooping, kneeling, pushing, pulling, and carrying. He also found plaintiff to be moderately limited with regard to standing and walking. Tr. 214-216.

On February 5, 2007, Dr. Ross completed a physical RFC assessment. Tr. 202-205. He concluded that plaintiff could sit for 2 hours during an 8-hour workday; stand and/or walk for 10 to 30 minutes during an 8-hour workday; occasionally lift up to 5 pounds; never lift more than 5 pounds; never carry; could not push/pull or work about shoulder level; could never bend, squat, crawl, climb, reach, stoop, or crouch; and, would have mild restrictions with regard to working near marked changes in temperature, humidity, and performing tasks requiring him to drive. Dr. Ross stated that his RFC was based on x-rays of Plaintiff's back and neck and his history of grand mal seizures. Tr. 202-205. At this time, Plaintiff's medications included Oxycodone, Nexium, Methocarbamol, Cymbalta, Lexapro, and Tegretol. Tr. 209.

4

On July 30, 2010, Dr. Ross completed a second physical RFC assessment. Tr. 681-683. He indicated that Plaintiff could seldom lift less than 10 pounds, never lift more than 10 pounds, stand and walk less than 2 hours during an 8-hour workday, sit less than 6 hours during an 8-hour workday, must alternate between sitting and standing to relieve discomfort, and was limited with regard to pushing and pulling with his upper extremities. Dr. Ross stated that his findings were supported by MRIs of Plaintiff's lumbar and cervical spine showing abnormalities that would make it difficult for Plaintiff to even perform activities of daily living. He then opined that Plaintiff could never climb, balance, kneel, crouch, or crawl; would be limited with regard to reaching, handling, fingering, and feeling due to the pain in his back and neck and numbness in his fingers; and, should avoid temperature extremes, noise, vibration, humidity/wetness, and hazards. Dr. Ross further explained that temperature, noise, vibration, humidity, and wetness could affect Plaintiff's pain level. Tr. 681-683.

We note that Dr. Ross's treatment of Plaintiff began in December 2005 and continued through April 2010, spanning approximately five years. Tr. 170-171, 174, 175, 177-178, 210, 363-369, 631, 686-687, 689-690, 693-694, 695-696, 697, 698-699. During that time, physical exams revealed marked paraspinous muscle spasm, protective movement of the neck, an antalgic gait (limp), the use of a cane, abnormal nerve root findings, positive bilateral straight leg raise tests, tenderness in the lumbosacral spine, and a decreased range of motion in the lumbar spine.[1]

Additional objective records also provide support for Dr. Ross's physical findings. An MRI of Plaintiff's lumbar spine revealed a mild wedge shaped appearance of the superior end plate of the T12, especially towards the left side that may be due to an old fracture; a loss of T2 disk signal and height at the L5-S1; and, a broad disk bulge at the L5 with right sided posterolateral protrusion along the inferior

---

[1]There are also records from Dr. Ross that do not contain the findings of his physical exam. Instead, they simply refer to the "face sheet," which is not included in the record. Tr. 172, 207, 246, 248, 252-253, 254, 520-522. However, it does not appear that these face sheets were ever requested by the ALJ.

aspect of the foramen narrowing the right lateral recess, not obviously compressing the exited L5 nerve root. Tr. 154. A follow-up MRI was conducted in December 2005, again revealing herniation of the L5-S1 disk with herniation to the right having some mild effect on the passing right S1 nerve root. Tr. 142, 179.Plaintiff was diagnosed with L5-S1 herniated disk with right radiculopathy and referred to a neurosurgeon. Tr. 142.

On January 26, 2006, neurosurgeon, Dr. Arthur Johnson evaluated Plaintiff. Tr. 229-234. He complained of back pain with radiation to the right hip, right leg, and posteriorly to the ankle. Plaintiff had anterior thigh numbness and pain as well. He stated that he had not undergone physical therapy or epidural steroid injections, but desired to have surgical intervention if possible to alleviate his pain.[2] After reviewing Plaintiff's most recent MRI and an x-ray showing a compression fracture at the T12, Dr. Johnson diagnosed him with L5-S1 disk herniation with radiculopathy and lower back pain. He recommended that plaintiff undergo an L5-S1 pipeline diskectomy. Tr. 229-234.

Emergency room exams also revealed musculature tenderness in the lumbar spine, midline tenderness along the lower thoracic and upper lumbar, tenderness along the lower lumber paraspinous muscle, pain in his lower right side radiating down his right leg, and a decreased range of motion in his lumbar spine. Tr. 151-153, 278-283, 309-315, 318-325, 353-359, 510-513, 544-558. X-rays of his lumbar spine performed in January 2006 and March 2006 showed a compression fracture at the T12. Tr. 231, 349. Further, x-rays taken in March 2009 continued to show an anterior wedge compression fracture of the T12 vertebral body. Tr. 668-678.

---

[2]The record reveals that Plaintiff did not have insurance or the money to pay for these treatments. Dr. Ross gave him medication samples on numerous occasions, due to his financial constraints. Plaintiff also stated that he did not undergo surgery because he could not afford to do so and had been denied Medicaid. *Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir. 1984) (holding Plaintiff's lack of financial resources to pay for hypertension and headache medicine justified failure to follow a treatment plan). Further, there is no evidence to indicate that either mode of treatment would have been effective at eliminating Plaintiff's pain. *See Ludden v. Bowen,* 888 F.2d 1246, 1249 (8th Cir. 1989) (holding failure to follow a treatment mode suggested with only speculative expectation of medical improvement is not a valid reason for disallowing benefits).

This matter was initially remanded to the ALJ with directions that he consider additional medical records from Dr. Ross that had been presented to the Appeals Council. Although it does appear that the ALJ considered some of Dr. Ross's records, it does not appear that he considered all of the records. This is evidenced by the fact that he began his discussion of Dr. Ross' assessments with the following phrase, "Despite the paucity of objective medical findings in Dr. Ross' medical records and in the records from St. Edward Mercy Medical Center and Summit Medical Center." To the contrary, the overwhelming majority of the records presented indicate that Plaintiff was suffering from a severe impairment related to his back that resulted in some significant impairment in functioning.

The ALJ also contends that Dr. Ross' 2006 assessment mentions no objective medical findings to support it. However, Dr. Ross specifically noted that his RFC assessment was based on his treatment history with Plaintiff, as well as x-rays and MRI's revealing abnormalities. And, although the ALJ failed to mention it, Dr. Ross also completed an RFC assessment in 2010, in which he again stated that his opinion was supported by the findings of MRIs of Plaintiff's lumbar and cervical spine showing abnormalities that would make it difficult for him to perform activities of daily living. Dr. Ross also indicated that exposure to temperature fluctuations, noise, vibration, humidity, and wetness could affect Plaintiff's pain level. Given that the MRI's and x-rays of Plaintiff's lumbar spine, as well as the many examinations of Plaintiff have revealed some significant problems, we believe remand is necessary to allow the ALJ to properly consider Dr. Ross' assessments and all of the medical records in evidence.

We are aware that the record contains a few medical records suggesting that Plaintiff was seeking additional or higher dosages of pain medication. And, we note the ALJ's attempts to dismiss Plaintiff's pain on this basis. However, given that the record does indicate that Plaintiff was suffering from a significant degree of pain and limitation, as well as the fact that he was being prescribed opiate pain medication on a regular basis, we believe more information is necessary before it can be determined that Plaintiff was "drug seeking." It is possible that Plaintiff had developed a physical dependence on

7

the medications prescribed to treat his chronic pain.³ As this is common among chronic pain sufferers, if the ALJ still finds this issue to be of significance on remand, he should re-contact Dr. Ross to develop the record in this regard. *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (holding that an ALJ should recontact a treating or consulting physician if a critical issue is undeveloped). At current, Dr. Ross' assessments make no mention of drug abuse or dependence.

IV.   **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of February 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

---

³"Long term use of opioids results in physical dependence, which is different from addiction, but does not usually lead to addiction." American Academy of Pain Medicine, *American Academy of Pain Medicine Statement on Appropriate Use of Opiods*, http://www.painmed.org/Workarea/DownloadAsset.aspx?id=3266 (last visited February 15, 2012). "Physical dependence is a normal adaptive state, the expected result of using pain medicines (as well as other medications) for a long time." *Id*. It is also common for people who have been prescribed long term opioids to develop a tolerance to their pain medication and to need higher doses to achieve the same level of pain relief. Brunilda Nazario, M.D., *Pain Management: Drug Tolerance and Addiction*, http://www.webmd.com/pain-management/guide/drug-tolerance-addiction (last visited February 15, 2012).

AO72A
(Rev. 8/82)